IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH S. KOLACZEK, on behalf of JOSEPH A. KOLACZEK, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 2:03-CV-2798-TMP |
| KINDRED NURSING CENTERS EAST, LLC, d/b/a REHABILITATION HEALTHCARE CENTER OF BIRMINGHAM, ) ) ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed on September 29, 2005, by the defendant, Kindred Nursing Centers East, LLC, d/b/a Rehabilitation Healthcare Center of Birmingham ("Kindred").[1] The plaintiff, Joseph S. Kolaczek, filed an opposition to the motion for summary judgment on October 24, 2005. Defendant filed a reply on November 4, 2005. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Having considered all the evidence and briefs, the court finds that the motion for summary judgment is due to be denied.

---

[1] The motion recites that it also is brought by Health & Rehabilitation Institute of Birmingham; however, the amended complaint filed December 31, 2003, substituted Kindred for Health & Rehabilitation Institute. Accordingly, Health & Rehabilitation Institute no longer is a party to this action.

## **SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Applying the foregoing standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff. Plaintiff[2] asserts that the defendant committed medical malpractice by failing to properly treat a wound on Kolaczek's leg, resulting in the amputation of Kolaczek's left leg below the knee. Kolaczek was 85 years old when he was admitted to Kindred on August 1, 2003.  Kindred is an assisted-living facility offering nursing care.  He had a history of bilateral arterial insufficiency to his lower extremities, which caused a reduction in blood flow to his legs.  He was moved to Baptist Montclair Hospital on August 12, 2003, for the removal of a blood clot in his left leg, a surgical procedure known as an embolectomy.  Two days after the embolectomy, Kolaczek also had to undergo a fasciotomy, which is an open surgical wound made to relieve pressure in the left leg. Kolaczek was discharged from Baptist and readmitted to Kindred on August 26, 2003, where he remained until September 5, 2003. Plaintiff's expert witness on wound care, Marjorie Groom, has testified that the nursing home staff deviated from the standard of care expected of wound-care

---

[2]   Joseph S. Kolaczek is the plaintiff, and brings this action as administrator of the estate of Joseph A. Kolaczek, whose medical treatment at the defendant nursing home is made the basis of the instant action.  Joseph S. Kolaczek will be referred to as plaintiff, but Joseph A. Kolaczek will be referred to as Kolaczek.

nurses when they failed to clean the wound properly, failed to notice and chart changes in the wound indicative of decreased blood flow, and failed to notify a physician of Kolaczek's need for treatment during his 10-day stay at Kindred.  On September 5, 2003, Kolaczek was returned to Baptist Montclair Hospital, where it was determined that his leg could not be saved.  He underwent the amputation on September 9, 2003.  Plaintiff's second expert witness, Dr. Donald Patrick, a vascular surgeon, has testified that it is more likely than not that the negligence of the nursing home, as described by Ms. Groom, caused the amputation of Kolaczek's leg, although he acknowledges that there are other possible causes.

The complaint asserts a claim for medical malpractice pursuant to Alabama Code § 6-5-480, *et seq*., alleging that Kindred breached the standard of care in treating Kolaczek's surgical wounds between August 26, 2003, and September 5, 2003, proximately causing the amputation.  Plaintiff alleges that the inadequate treatment resulted in an infection of the leg wound, which necessitated the amputation.[3]  In support of his claim, plaintiff has offered expert testimony from Groom and Patrick, to establish, respectively, the deviation from the standard of care and proximate causation. Kindred seeks summary judgment in its favor, asserting that the plaintiff has failed to meet his burden of proving by substantial evidence that Kindred failed to exercise the level of reasonable care, skill, and diligence as other similarly situated health care providers exercise in a like case and that any breach in the standard of care proximately caused the injury.  The primary focus of Kindred's motion is lack of proof of proximate causation.

---

[3] Kolaczek died a month later of natural causes, but plaintiff does not seek to impose liability on the basis of wrongful death.  The claim in this case involves only the pre-death amputation of the leg.

### **DISCUSSION**

In a medical malpractice action brought under the Alabama Medical Liability Act ("AMLA"), a plaintiff has the burden of proving by "substantial evidence" that the defendant health care provider failed to exercise the level of reasonable care, skill, and diligence that other similarly situated health care providers would exercise in a similar case. Ala. Code § 6-5-548. The non-movant must offer substantial evidence, usually through expert testimony, that the defendant breached the standard of care and that the breach proximately caused the injury. Id. See Cain v. Howorth, 877 So. 2d 566, 576 (Ala. 2003). The requirement that the non-movant's evidence be "substantial" is defined by Alabama Code § 6-5-542(5), which describes "substantial evidence" as "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."

A medical malpractice case generally requires the plaintiff to offer expert testimony from a similarly situated health care provider regarding the appropriate standard of care, the deviation from that standard of care, and the proximate cause of the injury. Lyons v. Walker Regional Medical Center, 791 So. 2d 937, 942 (Ala. 2000), quoting Pruitt v. Zeiger, 590 So. 2d 236, 238 (Ala. 1991). The only time expert testimony is not required is when the lack of due care or the breach of the standard is understandable through common knowledge or experience. See, *e.g.*, McAfee v. Baptist Medical Center, 641 So. 2d 265, 267 (Ala. 1994).

Proximate cause is established by a showing that the injury was "probably caused" by the defendant's conduct. Cain v. Howorth, 877 So. 2d 566, 576 (Ala. 2003); see also Levesque v. Regional Medical Center Board, 612 So. 2d 445, 448 (Ala. 1993). "There must be more than the

mere possibility that the negligence complained of caused the injury; rather, there must be evidence that the negligence complained of *probably* caused the injury." OCH Healthcare Authority v. Duckworth, 883 So. 2d 1214, 1217 (Ala. 2003), quoting Parker v. Collins, 605 So. 2d 824, 826 (Ala. 1992) [emphasis added].

The parties do not dispute that nursing homes may be health care providers subject to a malpractice claim under the Alabama Medical Liability statute. Moreover, the parties do not dispute that the two witnesses proffered by plaintiff are qualified to testify as experts in the fields in which they are trained. What defendant asserts in its motion for summary judgment is the argument that each expert *separately* fails to address *both* elements of deviation from the standard of care and proximate cause. First, defendant argues that the testimony of Marjorie Groom, a wound care nurse, is irrelevant because she fails to testify to the element of the causation of the amputation, but offers testimony only as to the standard of care and the breach of that standard. Second, defendant contends that the testimony of Dr. Donald Patrick, a vascular surgeon who has testified that the failure to properly treat the wound resulted in the amputation, is not "substantial evidence" of causation because Dr. Patrick concedes that there are other possible causes for the amputation.

It appears to the court that defendant's motion for summary judgment is due to be granted only if the Alabama law governing malpractice actions requires either that the *same* expert witness provide testimony as to *all* elements of a malpractice claim, or that an expert's concession that there are other "possible" causes for an injury negates an otherwise adequate showing of "probable" proximate cause. Defendant has offered no support for either of these positions, and the court finds none.

As to Groom's testimony, she has stated that (1) the wound was not properly cleaned by the defendant's nursing staff from the wound bed to the periphery of the wound, (2) changes in the status of the wound indicative of decreased blood flow were not adequately described in the nursing charts, (3) wound care was not provided on a daily basis as ordered by the physician, and (4) there was no proper care given to nutrition and other aspects of care that contribute to wound healing. Her testimony clearly set forth a standard of care and the breach of that standard by the defendant nursing home. There simply is no support for the proposition that Groom also must offer causation testimony, or her testimony must be deemed irrelevant. The structure of the AMLA calls for experts to testify only as to the conduct of a health care provider who is "similarly situated." Here, Groom is similarly situated because she has training and experience as a wound care nurse with "hands on" experience in treated wounds. As the Alabama courts have noted, while nurses are qualified to address the standard of care applicable to administering nursing aid to patients, nurses are not diagnosticians and are not generally qualified to testify as to medical causation. See, *e.g.*, Nelson v. Elba General Hospital, 828 So. 2d 301 (Ala. Civ. App. 2000).[4] At the same time, it is arguable that a vascular surgeon would not be qualified to testified to how a wound should be cared for in a nursing home. See, *e.g.*, Husby v. South Alabama Nursing Home, Inc., 712 So. 2d 750, 753 (Ala. 1998)(holding that neither a nursing home administrator nor an anesthesiologist was qualified to testify as to the standard of care for "hands on" nursing care). This almost necessarily means that

---

[4] Nelson was reversed by the Alabama Supreme Court on the court's granting of a motion to strike one nurse's affidavit, 828 So. 2d 315, but that does not affect the court's statement regarding a nurse's limited ability to testify as to causation. The case further stands for the proposition that a plaintiff may rely on the testimony of more than one expert to prove the elements of the medical malpractice claim.

plaintiff must rely on two experts — one on the standard of care and one on proximate causation — to meet his burden of proof under the AMLA.

Dr. Patrick testified that, if the nursing home had adequately treated the wound in Kolaczek's leg after he was re-admitted there on August 26, 2003, Kolaczek most likely would have maintained a viable leg and amputation would not have been necessary. He unequivocally testified that the nursing home's treatment or lack thereof proximately caused the amputation. Dr. Patrick's testimony may be subject to lively cross examination, as it is true that he testified that it was "possible" that problems in the leg had already begun before Kolazcek went to the nursing home, or that other issues contributed to the leg's deterioration, but questions about the weight of his testimony are not material in addressing a summary judgment motion. The court is not allowed to assess the credibility or believability of the testimony, but, rather, must accept it as true for purposes of resolving this motion. There is no provision under Alabama law that defendant has identified or of which this court is aware that requires the plaintiff to offer substantial evidence that the breach of the standard of care is the *only* conceivable cause of an injury. Rather, the law requires only that, from among spectrum of "possible" causes, the identified one is likely the "probable" cause. Moreover, it seems highly unlikely that such a high degree of certainty can ever be attained in the realm of medicine where differential diagnosis attempts to rank multiple causes of disease and injury from least likely to most likely. Certainly, the very requirement found in Alabama Code § 6-5-549 that the breach "probably" caused the injury acknowledges the existence of other possibilities or uncertainties.
Accordingly, plaintiff has demonstrated a *prima facie* case under the AMLA, and the defendant has

failed to show the absence of a genuine issue of material fact that would entitle it to summary judgment in its favor.  The motion for summary judgment is due to be denied.

## CONCLUSION

For all the reasons set forth herein, the defendant's motion for summary judgment (court document # 22) is due to be DENIED.  A separate order will be entered denying the motion.

DATED this 2nd  day of March, 2006.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE